UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12-CV-00186-JHM-HBB

CINCINNATI INSURANCE COMPANY                      PLAINTIFF

V.

RICHIE ENTERPRISES LLC                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Alter [DN 29] of the Plaintiff, Cincinnati Insurance Company ("Cincinnati"), in which Cincinnati asks the Court to alter its Memorandum Opinion and Order [DN 28] that was entered on March 4, 2014. Fully briefed, this matter is ripe for decision. For the following reasons, Cincinnati's motion [DN 29] is **GRANTED**.

## I. BACKGROUND

The Defendant, Richie Enterprises, LLC ("Richie"), is a pharmaceutical drug distributor incorporated in Kentucky. On June 26, 2012, the State of West Virginia, through its Attorney General, sued Richie and other pharmaceutical drug distribution companies, alleging that they illegally distributed controlled substances by supplying physicians and drugstores with drug quantities in excess of legitimate medical need. (See Compl. [DN 20-2] ¶¶ 2-3.) According to the Attorney General, Richie and the other drug distribution companies became an integral part of the "pill mills" in West Virginia. (Id. ¶ 4.) The Attorney General thus alleges that they are liable for the harms caused to the State of West Virginia. (Id. ¶ 2.)

Once it was named as a defendant in the West Virginia lawsuit, Richie sought insurance defense from Cincinnati under its commercial general liability policy ("CGL policy"). Cincinnati, however, refused to provide Richie with a defense after concluding that the Attorney General's

claims against Richie did not fall within the CGL policy's limits. Cincinnati then filed this declaratory judgment action, seeking the Court's declaration that it had no duty to either defend or indemnify Richie with respect to the West Virginia action.

On March 4, 2014, the Court entered a Memorandum Opinion and Order [DN 28]. In it, the Court denied Cincinnati's motion for a declaratory judgment and concluded that the claims asserted against Richie in the underlying action potentially came within the coverage provided by the CGL policy, triggering Cincinnati's duty to defend. In specific, the Court found that the underlying lawsuit contained allegations of an "occurrence," as defined by the CGL policy. (See Mem. Op & Order [DN 28] 6-12.) The Court also found that the Attorney General was seeking damages for "bodily injury." (Id. at 12-14.) As to its finding of "bodily injury," the Court stated:

> [T]he underlying complaint is filled with allegations which show that the State of West Virginia seeks economic damages—i.e. the money it has been required to spend due to the prescription drug abuse epidemic. But in addition to seeking damages for economic harm, the AG's complaint also contains allegations which seek damages for "bodily injury." Specifically, in Count VII, the AG brings a claim for the costs of a "medical monitoring" program. The AG alleges that the "increased susceptibility to death, injuries and irreparable harm to the health of abusers and dependent users resulting from their exposure to prescription drugs can only be mitigated or addressed by the creation of a Court-supervised fund, financed by the Defendants, that will fund a comprehensive medical monitoring program . . . ." The AG also alleges that "[p]rescription drug users in West Virginia have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them . . . ." Further, the AG alleges that "[w]ithout a court-approved medical treatment monitoring program, the relevant product users will not receive prompt medical care which could detect and prolong their productive lives, increase prospects for improvement and minimize disability." **These allegations show that in addition to seeking damages for economic harm, the State of West Virginia is seeking to recover damages on behalf of its citizens for "bodily injury."**

(Id. at 13-14 (emphasis added and internal citations omitted).) In other words, the Court relied on Count VII in the underlying complaint, containing the Attorney General's "medical monitoring" claim, to hold that the underlying lawsuit asserted claims for "bodily injury." (See id.)

2

After the parties filed their dispositive motions in this federal case, the Attorney General filed an amended complaint in the underlying action. In the amended complaint, the Attorney General entirely removed Count VII and all of the allegations relating to its medical monitoring claim. As a result, the specific paragraphs cited by the Court for the proposition that the claims against Richie were for "bodily injury" no longer appear. (Am. Compl. [DN 29-2].) Cincinnati argues that with the removal of the allegations which formed the basis for the Court's decision that the claims against Richie included claims for "bodily injury," it no longer has a duty to provide a defense to Richie. Cincinnati asks the Court to alter its Memorandum Opinion and Order [DN 28] to reflect this fact. (See Mem. in Supp. of Mot. to Alter [DN 29-1] 2-3.) In the alternative, if the Court does not alter its Memorandum Opinion and Order, Cincinnati asks that the Court make that opinion final and appealable pursuant to Rule 54(b). (See id. at 3.)

## II. STANDARD OF REVIEW

Cincinnati brings its motion "pursuant to Rule 59(e)." (Mot. to Alter Mem. Op. & Order [DN 29] 1.) However, a Rule 59(e) motion shall "be filed no later than 10 days after **entry of [the] judgment**." Fed. R. Civ. P. 59(e) (emphasis added). In this case, no final "judgment" has been entered. Therefore, Rule 59(e) does not apply. See Loomis v. Chrysler Corp., 4 Fed. App'x 214, 215 (6th Cir. 2001) (upholding a district court's denial of a motion to alter or amend a judgment because no final judgment had been entered).

Nevertheless, district courts possess the authority and discretion to reconsider and modify their interlocutory orders at any time before final judgment. See Leelanau Wine Cellars Ltd. v. Black & Red, Inc., 118 Fed. App'x 942, 945-46 (6th Cir. 2004) (noting that district courts "have inherent power to reconsider interlocutory orders . . . before entry of a final judgment" and that such courts "may modify, or even rescind, such interlocutory orders"); Stewart v. Classicke, Inc.,

3

2007 WL 2908751, at *1 (W.D. Ky. Oct. 4, 2007). This authority arises both from common law and under Rule 54(b). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed. App'x 949, 959 (6th Cir. 2004). A motion to reconsider under Rule 54(b), however, "may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought." Owensboro Grain Co., LLC v. AUI Contracting, LLC, No. 4:08CV-94, 2009 WL 650456, at *2 (W.D. Ky. Mar. 10, 2009) (citing Jones v. Casey's Gen. Stores, 551 F. Supp. 2d 848, 854-55 (S.D. Iowa 2008); Rodriguez, 89 Fed. App'x at 959).

### III. DISCUSSION

In Cincinnati's memorandum in support of its motion to alter, Cincinnati makes clear that it "is not seeking to reargue the issues already addressed and resolved by the Court or otherwise rehash the arguments previously made." (Mem. in Supp. of Mot. to Alter [DN 29-1] 1.) Instead, Cincinnati's motion is "based on the fact that the allegations made against Richie Enterprises in the underlying case have been amended and the claims which the Court found came within the Cincinnati policy's bodily injury definition have been removed." (Id.) In response to this motion, Richie does not dispute that West Virginia's Attorney General amended its complaint to remove Count VII and its claim for medical monitoring. Nevertheless, Richie argues that the Court's prior ruling that Cincinnati owes it a defense remains correct—even in light of Count VII's removal. (See Def.'s Resp. to Pl.'s Mot. to Alter ("Def.'s Resp.") [DN 30] 3.)

The CGL policy at issue provides that Cincinnati only has a duty to defend against suits that seek damages "because of 'bodily injury' . . . to which this insurance applies." (CGL Policy

4

[DN 21-3] 13.) "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Id. at 29.) In its initial Memorandum Opinion and Order [DN 28], the Court considered whether or not the complaint contained allegations of "bodily injury." (Mem. Op. & Order [DN 28] 12-14.) As noted above, the Court found that it did. (Id. at 13.) Now, for the first time, Richie argues that the Court should interpret the phrase "because of bodily injury" more broadly than the phrase "for bodily injury." According to Richie, when the Court employs a broader interpretation, it must find that here, even in the absence of Count VII and the medical monitoring claim, West Virginia is seeking damages "because of" the bodily injury of its citizens. In support of its argument, Richie cites the Seventh Circuit's decision in Medmarc Casualty Ins. Co. v. Avent America, Inc., which noted:

> [C]ourts do interpret [the phrase "because of bodily injury"] differently [than the phrase "for bodily injury"] and courts generally interpret the phrase "because of bodily injury" more broadly. The logic of this difference in interpretation can be illustrated by considering the following example: an individual has automobile insurance; the insured individual caused an accident in which another individual became paralyzed; the paralyzed individual sues the insured driver only for the cost of making his house wheelchair accessible, not for his physical injuries. If the insured driver had a policy that only covered damages "for bodily injury" it would be reasonable to conclude that the damages sought in the example do not fall within the insurer's duty. However, if the insurance contract provides for damages "because of bodily injury" then the insurer would have a duty to defend and indemnify this situation.

612 F.3d 607, 616 (7th Cir. 2010) (internal citation omitted). According to Richie, the underlying complaint, at its core, seeks compensation for expenses, damages, and losses incurred because of the addiction, increased injury, and death arising from prescription drug abuse. Richie states that the alleged damages thus arise "because of 'bodily injury.'" (Def.'s Resp. [DN 30] 3.)

In its reply, Cincinnati first argues that Richie waited too late to make this argument—and that Richie should have made the argument long before it filed its response to Cincinnati's motion to alter. (Reply Mem. in Further Supp. of Mot. to Alter [DN 31] 2.) Cincinnati notes that

Richie should have, but did not, make those arguments in its briefs filed prior to the Court ruling on the cross-motions for summary judgment. (<u>See</u> Mem. Op. & Order [DN 28] 13 ("Richie does not clearly articulate a response to this [bodily injury] argument.") Second, Cincinnati argues that Richie's argument is inconsistent with the State of West Virginia's own position on the nature of the damages sought. In this respect, Cincinnati notes that when arguing that its case was improperly removed to federal court, the Attorney General claimed that "the only monetary damages asserted in this action are those that inure to the state, alone. There are no monetary damages sought in this action based on damages suffered by individual West Virginia citizens." (W.V.'s Mem. in Supp. of Mot. to Remand, <u>W.V. *ex rel.* Morrisey v. AmerisourceBergen Drug Corp.</u>, No. 2:12-3760, 2012 WL 8281289, at *11 (S.D. W. Va. Aug. 27, 2012). Third, Cincinnati argues that while <u>Medmarc</u> noted that courts interpret the phrases "because of bodily injury" and "for bodily injury" differently, the case's ultimate holding supports its position, as the Seventh Circuit found no duty to defend. 612 F.3d at 616. In sum, Cincinnati argues that West Virginia is seeking recovery for economic losses; it is not seeking damages "because of bodily injury."

The Court agrees with Cincinnati. As an initial matter, the Court agrees with Cincinnati that Richie should have made its argument much earlier, in its briefs filed prior to the Court's ruling on the cross-motions for summary judgment. Thus, the Court need not consider Richie's argument here. <u>See</u> <u>Owensboro Grain Co., LLC v. AUI Contracting, LLC</u>, No. 4:08CV-94, 2009 WL 650456, at *2 (W.D. Ky. Mar. 10, 2009) (citations omitted) (noting that a Rule 54(b) motion "may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought"). The Court notes, however, that even if it were to consider Richie's argument, it would still find in favor of Cincinnati. In this respect, the Court turns to <u>Medmarc</u>.

In Medmarc, parents who bought products containing Bisphenol-A ("BPA") sued the products' manufacturer, alleging that they did not receive the full benefit of their purchase. Id. at 609. The parents alleged that the manufacturer was aware of a large body of research which showed that BPA, even at low levels, is harmful to humans (and, especially, children)—and that despite this knowledge, the manufacturer marketed its products as superior in safety to other products for infants and toddlers. Id. The insurance companies for the manufacturer argued that they had no duty to provide a defense, as the parents' claims sought economic damages due to the purchase of unusable products, not damages "because of bodily injury." Id. The manufacturer countered that it was owed a defense because the parents' claims ultimately related to products that caused physical harm to consumers due to their BPA exposure. The manufacturer argued that the damages sought were thus "because of bodily injury." Id. at 609, 614.

In concluding that the insurance companies had no duty to provide a defense, the Seventh Circuit first noted the parents' concession in the underlying case that they were "seeking only economic damages and [did] not claim any bodily injury." Id. at 615. The Court then held that "[e]ven considering the broader duty to defend created by the phrase 'because of bodily injury,' the complaints in the underlying suits [did] not reach the level of asserting claims 'because of bodily injury.'" Id. at 616. The Court reasoned that the parents' theory of relief was "not that a bodily injury occurred and the damages sought flow from that bodily injury." Instead, it was "that the plaintiffs would not have purchased the products had [the manufacturer] made certain information known to consumers . . . ." Id.

The Seventh Circuit in Medmarc cited Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center, 566 F.3d 689 (7th Cir. 2009), in support of its holding. In that case, the underlying complaint alleged that nursing home patients were mistreated, leading

7

to the nursing home submitting false claims to Medicare and Medicaid. Id. at 691. The complaint laid out numerous abuses that caused bodily injury to patients. However, the court nevertheless found that the complaint did not assert damages "because of bodily injury." It reasoned:

> The injuries to the residents as alleged by the plaintiffs relate back to Momence's cost reports to the government where it certified that it provided quality services and care. Plaintiffs claim Momence knew that was false. The statutory damages they seek result from those allegedly false filings, and not from any alleged bodily injury to the residents. Although the allegations in the underlying complaint detailing the injuries suffered by Momence residents put a human touch on the otherwise administrative act of false billing, they need not be proven by the plaintiffs to prevail. Under the FCA and the IWRPA, the plaintiffs do not have to show that any damages resulted from the shoddy care.

Id. at 694. The Seventh Circuit in Medmarc stated that based on this logic, the claim that BPA could cause physical harm "only explain[ed] and support[ed] the claims of the actual harm complained of: the economic loss to the purchasers of the products due to the alleged false advertising and failure to warn." Id. at 617. The Court noted that to recover on their claims, the parents did not need to prove that any actual injury occurred, or even that BPA conclusively causes bodily injury. See id.

The Court finds that a similar rationale is applicable here. In this case, in the absence of the medical monitoring claim, West Virginia is solely seeking damages for the money it has been required to spend because of the prescription drug abuse epidemic in West Virginia. The State of West Virginia does not need to prove that persons were injured by prescription drugs to prove that Richie and the other drug distribution companies violated West Virginia's Uniform Controlled Substances Act or Consumer Credit and Protection Act. Likewise, they need not offer such proof to show that Richie and the other drug distribution companies caused a public nuisance—or to show that they were negligent in their distribution of controlled substances, causing the State of West Virginia to incur excessive costs. The Attorney General's claim that

persons suffered physical harm and death due to prescription drugs only explains and supports the claims of the actual harm complained of: the economic loss to the State of West Virginia.[1] Accordingly, the Court finds that Cincinnati does not have a duty to provide a defense to Richie in connection with claims asserted in the amended complaint in light of the Attorney General's deletion of Count VII and its medical monitoring claim.

Richie's response suggests that such a holding is contrary to the CGL policy's language, which states that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" (CGL Policy [DN 21-3] 14.) Richie argues that the State of West Virginia should be deemed an organization seeking damages "because of bodily injury" for the care, loss of services, and death due to the alleged prescription drug epidemic in that state. (See Def.'s Resp. [DN 30] 10.) But the Court again reiterates that West Virginia is not seeking damages "because of" the citizens' bodily injury; rather, it is seeking damages because it has been required to incur costs due to Richie and the other drug distribution companies' alleged distribution of drugs in excess of legitimate medical need. This distinction, while seemingly slight, is an important one. As such, Cincinnati's motion is **GRANTED**. The Court need not rule on Cincinnati's request to make the March 4, 2014 Memorandum Opinion and Order [DN 28] final and appealable.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Cincinnati's motion to alter [DN 29] is **GRANTED**. The Court's conclusion in its previous Memorandum Opinion and Order [DN 28] that Cincinnati owed Richie a defense based on the allegations in the underlying

---

[1] To the contrary, to support the medical monitoring claim, the Attorney General would have been required to prove that West Virginia's citizens suffered physical harm and death from using prescription drugs. Such proof would have been required to establish that the citizens had no adequate remedy at law—and to establish that monetary damages alone would not compensate them. Such proof also would have been required to show that the users would not receive prompt medical care without the court-approved medical treatment monitoring program.

complaint remains the same: Cincinnati is obligated to reimburse Richie for its defense costs in the underlying action from the time the original complaint was filed on June 26, 2012 until the amended complaint was filed in January of 2014. The Court clarifies, however, that due to the amended complaint's allegations, and the deletion of Count VII and the medical monitoring claim, Cincinnati no longer has a duty to pay Richie's defense costs in the underlying suit.

cc: counsel of record